IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CAROL SMITH, | ) | CASE NO.  1:11-CV-2313 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. 14). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Carol Smith's applications for Disabled Widow's benefits, a Period of Disability and Disability Insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and therefore, conclusive.

For the reasons set forth below, the undersigned AFFIRMS the decision of the Commissioner.

## I. PROCEDURAL HISTORY

In September 2005, Plaintiff Carol Smith ("Plaintiff" or "Smith") applied for Disabled Widow's benefits, a Period of Disability and Disability Insurance benefits.  (Tr. 112, 189-91). She applied for Supplemental Security Income benefits in February 2006.  (Tr. 186-88).  Plaintiff alleged she became disabled on September 22, 2005, due to suffering from a stroke, hypertension, diabetes, angina and back problems.  (Tr. 184, 219).  The Social Security

Administration denied Smith's applications initially and upon reconsideration. (Tr. 112-13, 158-60, 165-67). Thereafter, Plaintiff requested a hearing before an administrative law judge to contest the denial of her applications. (Tr. 157). The administration granted Plaintiff's request and scheduled a hearing. (Tr. 153-54).

On November 10, 2008, Administrative Law Judge Peter Bronson (the "ALJ") convened a hearing to evaluate Plaintiff's applications. (Tr. 90-110). Plaintiff, represented by counsel, testified before the ALJ during the proceeding. (*Id.*). Medical expert, Dr. Herschel Goren, (the "ME"), was also present at the hearing and testified. (*Id.*). A vocational expert also appeared but did not testify. Prior to concluding the hearing, the ALJ ordered Smith to undergo both physical and psychological consultative examinations. (Tr. 104-10). The ALJ adjourned the proceeding pending the completion of these evaluations. (Tr. 108-09). On June 10, 2009, the ALJ convened a supplemental hearing during which Plaintiff, represented by counsel, and the ME appeared and testified again. (Tr. 47-89). However, a different vocational expert attended the hearing and provided testimony. (*Id.*).

On September 17, 2009, the ALJ issued an unfavorable decision finding Smith was not disabled. (Tr. 24-44). The ALJ applied the five-step sequential analysis,[1] and concluded

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability". *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

    (1)    If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

    (2)    If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

    (3)    If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve

Plaintiff retained the ability to perform work which existed in significant numbers in the national economy. Following the issuance of this decision, Smith sought review of the ALJ's decision from the Appeals Council. (Tr. 19). Yet, the council ultimately denied Plaintiff's request thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 11-14, 10, 3-6).

## II. PERSONAL BACKGROUND INFORMATION

Plaintiff was born on July 20, 1952. (Tr. 93). Accordingly, at the time she applied for benefits, she was considered as a "person closely approaching advanced age" for Social Security purposes. *See* 20 C.F.R. § 404.1563(d), 416.963(d). Smith attended high school through the 11th grade, but did not graduate or earn her GED. (Tr. 93). Plaintiff's relevant past experience includes working as a leasing agent and commercial cleaner. (Tr. 61-62).

## III. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his application of the five-step sequential evaluation process. At step one, the ALJ found Smith had not engaged in substantial gainful activity since her alleged disability onset date of September 22, 2005, through the date of his decision. (Tr. 27). At step two, the ALJ held that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, major depressive

---

months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

    (4)    If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

    (5)    Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

3

disorder and anxiety disorder (not otherwise specified). (Tr. 28-29). But, at step three, the ALJ ruled that none of these impairments met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 29-31).

Before moving to the next step, the ALJ assessed Smith's residual functional capacity ("RFC") to work. (Tr. 31-41). The ALJ concluded that Smith retained the ability to perform a limited range of work activities. (Tr. 31). For example, the ALJ indicated Plaintiff could only lift and carry up to 20 pounds occasionally and 10 pounds frequently. (*Id*.). The ALJ further indicated that Plaintiff could only stand and/or walk for four hours each workday. (*Id*.). Based upon this finding, at the fourth step, the ALJ held Plaintiff could return to her past work as a leasing agent. (Tr. 41-44). As a result, the ALJ ruled that Plaintiff was not disabled at any time between her onset date and the date of his decision. (Tr. 44).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984)*;* [Richardson v. Perales](), 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See* [Kirk v. Sec'y of Health & Human Servs.](), 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed*.* [Id.]() The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See* [Mullen v. Bowen](), 800 F.2d 535, 545 (6th Cir. 1986)*;* [Kinsella v. Schweiker](), 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See* [Garner](), 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See* [Walker v. Sec'y of Health & Human Servs.](), 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Smith presents two assignments of error challenging the ALJ's decision. First, she maintains that the ALJ erred by failing to name the partial tear in the tendon in her shoulder as a severe impairment at step two of the sequential evaluation. Second, Plaintiff submits that the ALJ improperly disregarded the opinions of her treating physician and of the consultative examiner who assessed her physical impairments at the ALJ's request.

### 1. Severe Impairment Finding At Step Two

In April 2008, Plaintiff's treating physician, Dr. John Nickels, stated she suffered from right shoulder pain. (Tr. 496). The doctor indicated that an MRI performed in September 2006

5

revealed Smith had a "partial-thickness tearing of the distal supraspinatus tendon with mild supraspinatus and infraspinatus tendinosis." (*Id*.).  Plaintiff claims this condition routinely caused her pain in her right arm and elbow which she reported to Dr. Nickels.  (*See* Tr. 252, 255-59, 261; Pl.'s Br. at 10).  Furthermore, Plaintiff notes that the physician who performed a consultative examination of her physical ailments at the ALJ's request, Dr. Medhi Saghafi, indicated that she was limited to only occasional reaching with her right arm.  (*See* Tr. 292).  Despite this evidence, the ALJ declined to label this impairment as severe at step two of the evaluation process.  Plaintiff contends his failure to do so constitutes reversible error.

It is well-established that this circuit views the step two determination as "a de minimis hurdle in the disability determination process."  *Childrey v. Chater*, 91 F.3d 143 (6th Cir. 1996) (Table) (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).  As such, a claimant's impairment should only be labeled as nonsevere when it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work".  *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).  Nevertheless, an ALJ's failure to label one of the claimant's conditions as severe will not constitute reversible error so long as the ALJ determines that the individual has at least one severe impairment and continues to evaluate both the claimant's severe and nonsevere impairments during the remaining steps of the analysis.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, the ALJ found Plaintiff had three severe impairments:  degenerative disc disease, major depressive disorder and anxiety disorder.  Because the ALJ found Smith suffered from at least one severe impairment, the ALJ was compelled to proceed to the next step of the established analysis, considering both Smith's severe and nonsevere impairments.  The ALJ did

6

just that. In fact, at step three, the ALJ explicitly stated that when he was considering whether Plaintiff's impairments met or equaled any listing, he considered all of her impairments "regardless of whether or not they were 'severe' impairments." (Tr. 29). Likewise, the ALJ's discussion of his RFC assessment specifically referenced Dr. Nickels' statements regarding the partial-thickness tearing in Smith's shoulder. (*See* Tr. 36). Consequently, as the Sixth Circuit has stated, "[t]he fact that some of [Plaintiff's] impairments were not deemed to be severe at step two is therefore legally irrelevant" as the ALJ found she suffered from at least one severe impairment and considered *all* of her impairments at the latter stages of the analysis. *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziarz*, 837 F.2d at 244); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009).

### 2. Medical Opinion Evidence

Next, Smith contends the ALJ improperly disregarded Dr. Nickels' opinion regarding the severity of her ailments. Specifically, Plaintiff objects to the ALJ's treatment of the findings contained within a letter Dr. Nickels dictated in April 2008. (Tr. 496-97). In it, Dr. Nickels indicated that he had been Smith's physician for many years. (Tr. 496). He described Plaintiff's ailments as including severe chronic pain in her neck and left arm which had been unresponsive to various forms of treatment, a partial-thickness tearing of a tendon in her right shoulder, and a ruptured disc in her lower back. (*Id.*). Dr. Nickels opined that Smith was "completely and totally disabled", and that she was "unable to do any active lifting, bending, pushing, or pulling activities." (*Id.*).

The ALJ credited Dr. Nickels' findings regarding the diagnosis of Smith's physical ailments, however, he gave no weight to the doctor's statements regarding Plaintiff's employability or capacity to perform work-related functions. Smith argues the ALJ's actions

7

were improper because he did not supply "good reasons" for rejecting this portion of Dr. Nickels' opinion.

Pursuant to the Social Security regulations, an ALJ must give special attention to opinions from a claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, known as the "treating source rule" recognizes that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id*.; 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2). Accordingly, opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544. Even when a treating source's opinion is not entitled to controlling weight, the regulations mandate that the ALJ consider certain factors in determining how much weight to assign to the opinion. *Id*. The regulations also require the ALJ to provide "good reasons" for the weight ultimately given to a treating source's opinion. *Id*.

Contrary to Plaintiff's suggestion, the ALJ properly evaluated Dr. Nickels' opinion under this framework. As an initial matter, the ALJ correctly held that Dr. Nickels' opinion regarding Smith's ability to work was not entitled to any deference. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). With respect to the doctor's opinion of Plaintiff's ability to perform various work-related activities, the ALJ indicated that the physician's opinions were not supported by his own treatment notes or other medical evidence. This finding essentially precluded the ALJ from assigning controlling weight to Dr. Nickels' opinions, as such weight is only afforded to opinions which are well-supported.

8

In further compliance with the doctrine, the ALJ supplied additional "good reasons" for his decision to discredit Dr. Nickels' remaining findings.  First the ALJ concluded that the doctor's statements were largely based on Smith's subjective complaints rather than the doctor's own objective findings.  The record supports the ALJ's conclusion.  During the supplemental hearing, the ME testified that based on his review, it did not appear that Dr. Nickels had ever examined Plaintiff.  (Tr. 54).  Under such circumstances, it was reasonable for the ALJ to discredit the doctor's opinion on this basis.  *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (ALJ properly discredited treating source opinions because they were based on claimant's subjective reports of her symptoms and the ALJ found claimant was not credible).

The Court is aware that shortly following Plaintiff's supplemental hearing, she submitted a letter from Dr. Nickels wherein he stated that his office conducts physical examinations of patients on each visit.  (*See* Tr. 37).  However, the ALJ did not fully credit this statement, finding *inter alia* that "[s]aying in a letter written long after the fact that his opinions were based on 'objective findings' based on physical examinations has much less probative value than saying so in records made at the time."  (*Id.*).  Plaintiff did not address this letter from Dr. Nickels or otherwise object to the ALJ's reasons for discounting it.  Accordingly, the Court finds substantial evidence supports the ALJ's conclusion that the doctor's work-related findings were not based on his own objective findings.

The ALJ also discredited Dr. Nickels' opinion because it was inconsistent with Plaintiff's own admissions regarding her abilities.  The ALJ highlighted that while Dr. Nickels opined Smith was unable to perform *any* active lifting, Smith testified that she could lift and carry a gallon of milk, which the ALJ estimated weighed eight pounds.  This contradiction provided another good reason for the ALJ to dismiss Dr. Nickels' opinion.  *See Ellis v. Comm'r of Soc.*

9

*Sec.*, 59 F. App'x 114, 115 (6th Cir. 2003) (holding it proper to reject treating physicians' opinions where they are not supported by the claimant's own testimony).

Though the ALJ did not fully accept Dr. Nickels' assessment, the record supports the ALJ's evaluation of Plaintiff's RFC because other medical opinion evidence in the record supports the ALJ's decision. The ALJ partially credited the opinions offered by Dr. Saghafi, the state agency reviewer and the ME, who all found Plaintiff less limited than Dr. Nickels. For example, all three physicians opined Smith retained the ability to perform *some* level of lifting, carrying, pushing and pulling, (Tr. 57, 285, 691), whereas Dr. Nickels precluded Smith from engaging in these activities. Notably, each of these doctors opined that Plaintiff retained a greater RFC than that ultimately reached by the ALJ. Yet, the ALJ did not simply accept their findings. Instead, he ruled that the record supported greater limitations and restricted Plaintiff's ability to work accordingly. The ALJ's treatment of these opinions demonstrates that his RFC assessment was based on a complete review of the record.

Lastly, Plaintiff accuses the ALJ of improperly "cherry-picking" portions of Dr. Saghafi's opinion. It is generally recognized that an ALJ "may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Goble v. Astrue*, 385 F. App'x 588, 593 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)). Yet, "the ALJ does not 'cherry pick' the evidence merely by resolving some inconsistencies unfavorably to a claimant's position." *Solembrino v. Astrue*, No. 1:10-cv-1017, 2011 WL 2115872, at *8 (N.D.Ohio May 27, 2011) (White, J.).

In the instant case, Plaintiff claims the ALJ erroneously rejected Dr. Saghafi's opinion limiting her to only occasional pushing, pulling and reaching overhead with her right hand. While the ALJ accepted some of the physician's findings, he did not credit the physician's

10

opinion regarding Smith's capacity to perform these tasks, holding they were "not supported by the weight of the evidence." (Tr. 39). In response, Plaintiff highlights the MRI findings showing a partial tear in her right shoulder and her related complaints of pain to Dr. Nickels. Yet, the record supports the ALJ's decision to disregard this aspect of the consultative examiner's opinion.

During the hearing, the ME acknowledged Plaintiff's MRI results, but testified that the range of motion in Smith's shoulders was normal and that she had no restriction on her physical abilities related to the use of her shoulders. (Tr. 55, 57). Thus, the ALJ did not simply accept portions of Dr. Saghafi's opinion while blindly rejecting other portions. Instead, he provided a reasoned basis for rejecting these findings, and such reason has support in the record. Rather than describing the ALJ's actions as "cherry-picking", the Sixth Circuit has explained that it could be more neutrally described as "weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). The undersigned acknowledges that there is evidence supporting the Plaintiff's view, nonetheless, the Court must affirm the ALJ's decision where, as here, it is supported by substantial evidence, as there is a "zone of choice within which the decisionmaker[] can go either way, without interference by the courts." *Mullen, supra*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

### VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: March 11, 2013.